JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022-3908
212-891-1600 (phone)
212-909-0843 (fax)
Attorneys for Plaintiff, Maria Rios Fun

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

|  |  |  |
|---|---|---|
| MARIA RIOS FUN | ) | **COMPLAINT** |
|  | ) |  |
|  | ) | No. |
| *Plaintiff*, | ) |  |
| v. | ) |  |
| MARITA PUERTAS PULGAR and | ) |  |
| ALEXIS AQUINO ALBEGRIN | ) |  |
| *Defendants*. | ) |  |

_____

Plaintiff Maria Rios Fun, by and through her undersigned attorneys, brings this action against Defendants Marita Puertas Pulgar and Alexis Aquino Albegrin, alleging as follows.

## I.      INTRODUCTION

1.      This is an action for damages and equitable relief brought by Maria Rios Fun (hereinafter "Plaintiff" or "Ms. Rios Fun"), who was trafficked for forced labor into the United States by Defendants Marita Puertas Pulgar and Alexis Aquino Albegrin (collectively, "Defendants").  The Defendants intentionally and outrageously subjected Ms. Rios Fun to

involuntary servitude and forced labor in violation of federal and state laws.

2.      The Defendants recruited Ms. Rios Fun into the United States under false pretenses, promised her fair wages and good working conditions, and signed a contract to this effect.  Instead, the Defendants preyed on her vulnerability, isolated her, and required her to work long hours for virtually no pay.

3.      Ms. Rios Fun seeks damages for trafficking her into the United States under false pretenses, damages and restitution for unpaid wages, damages for breach of contract and various state torts, an order requiring Defendants to return to Plaintiff her passport and other property that they are wrongfully retaining, and a temporary restraining order and an injunction requiring Defendants to cease harassing and threatening Plaintiff.

## II.      JURISDICTION AND VENUE

4.      This Court has original jurisdiction pursuant to 18 U.S.C. § 1595 (the Trafficking Victims Protection Reauthorization Act), 29 U.S.C. § 216(b) (the Fair Labor Standards Act); 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1351 (jurisdiction over all civil actions and proceedings against consuls and vice consuls of foreign states or members of a mission or members of their families).

5.      This Court has supplemental jurisdiction over the related state law claims under the doctrine of pendent jurisdiction and pursuant to 28 U.S.C. § 1367.  Supplemental jurisdiction over these claims is appropriate because they arise from the same common nucleus of operative facts from which the federal claims arise.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because (1) a substantial portion of the events giving rise to the claims in the Complaint occurred in the District of New Jersey, and (2) Defendants reside in the District of New Jersey.

### III.    PARTIES

7.      Ms. Rios Fun is a 40-year-old citizen of Peru who currently resides in Queens, New York.  She entered the United States lawfully on October 26, 2012 on a G-5 visa.  From October 26, 2012 until April 27, 2013, she resided at the Defendants' home located at 323 Black Oak Ridge Road in Wayne, New Jersey. Ms. Rios Fun does not speak or understand English.

8.      Defendant Pulgar is the First Secretary to the Mission of Peru to the United Nations.  Defendant Pulgar holds a G-4 visa.  Defendant Pulgar resides, with her partner, Defendant Alexis Aquino Albegrin, and their four children, at 323 Black Oak Ridge Road, Wayne, New Jersey.

9.      Upon information and belief, Defendant Albegrin is a citizen of Peru and also works at the Mission of Peru to the United States.  Defendant Albegrin currently resides with Defendant Pulgar and their four children at 323 Black Oak Ridge Road, Wayne, New Jersey.

### IV.    STATEMENT OF FACTS

10.      Defendants Pulgar and Albregin intentionally and outrageously recruited, transported, and obtained Ms. Rios Fun's forced labor and involuntary service through fraud and deception, and subsequently maintained and benefited from Ms. Rios Fun's labor and services through a pattern of abusive and coercive behavior designed to make Ms. Rios Fun believe that she could not leave the Defendants' employ and had no choice but to keep working for them.

**A.    Recruitment of Plaintiff**

11.      Ms. Rios Fun was born in Peru on January 8, 1973.  Ms. Rios Fun worked as a domestic worker and babysitter for much of her adult life.

12.       In or around late 2011 and early 2012, Defendant Pulgar contacted Ms. Rios Fun

3

and offered her employment as a domestic worker in the United States.  In 2012, Ms. Rios Fun agreed to consider coming to the United States.  Defendant Pulgar coordinated the paperwork and arranged for Ms. Rios Fun to learn how to drive, because Defendant Pulgar informed Ms. Rios Fun she would have to drive in the United States.

**B.      Promises by Defendants to Entice Plaintiff to Travel to the United States**

13.      Defendant Pulgar sent Ms. Rios Fun the Contract, attached as Exhibit A, by sending it to Pulgar's friend in Peru, who then presented it to Ms. Rios Fun.

14.      The Contract was provided to Ms. Rios Fun in Spanish and English.

15.      The Contract was Ms. Rios Fun's first and only experience with a written contract for employment.  The Contract provided that Ms. Rios Fun would work seven hours a day on five days per week.  It further provided that Defendant Pulgar would pay Ms. Rios Fun a salary of $9.82 per hour, and overtime pay of $14.73 per hour.  The contract provided that Ms. Rios Fun would receive her salary in full every month.

16.      The Contract also provided that Ms. Rios Fun would have two days off every week, and that she would be entitled to paid holidays, sick days, and paid vacation of 15 days per year.

17.      The Contract also provided that Ms. Rios Fun would have a bedroom and a bathroom for her exclusive use, and that she would be provided three meals per day, six days per week.

18.      The Contract provided that Ms. Rios Fun's presence in the Defendants' residence would not be required except during work hours.

19.      The Contract expressly provided that under no circumstances would the Defendants retain any personal property of Ms. Rios Fun including, among other things, her passport or visa.

20.      The Contract stated that Ms. Rios Fun would work as a "housekeeper."  Based on her communication with Defendant Pulgar, Ms. Rios Fun was reasonably led to believe that she would not be responsible for supervising the children in addition to taking care of the house.

21.      Ms. Rios Fun and Defendant Pulgar each signed the Contract in or around September 2012.

22.      The Defendants arranged to bring Ms. Rios Fun to the United States.  Ms. Rios Fun arrived in the United States on or about October 26, 2012, and began working immediately thereafter in the Defendants' home in Wayne, New Jersey.

23.      At all relevant times, Defendants were employers within the meaning of New Jersey Statutes Annotated § 34:11-56a1(g) and the Fair Labor Standards Act (29 U.S.C. §§ 201 *et seq.*).

**C.    The Defendants' Forced Labor and Exploitation of Ms. Rios Fun in the United States**

24.      When Ms. Rios Fun began working for Defendants, she discovered that the Defendants intended to violate all the terms of the Contract described in Paragraphs 13 through 21 of this Complaint.

25.      Instead of working seven hours per day as expressly provided in the Contract, Defendants required Ms. Rios Fun to work approximately 16 hours per day.  Ms. Rios Fun believed that she was earning extra money for working long hours, because her contract provided that she would be paid on an hourly basis.

26.      In the early morning, Ms. Rios Fun attended to the two older children and prepared their breakfasts and lunches and served them breakfast.  Ms. Rios Fun woke up the two younger children, the baby, who was 18 months old at the time, and the four-year old.  Ms. Rios Fun fed and changed the baby and the four-year old and prepared the four-year old for pre-

school.  Ms. Rios Fun drove the children to school and drove the four-year old to pre-school.

During the day, Ms. Rios Fun watched the baby; cleaned the bedrooms, bathrooms, living room,

and dining room; did laundry for the entire family; and was required to hand wash the baby's and

the four-year old's clothes.  In the middle of the day, Ms. Rios Fun picked up the four-year old

from pre-school.  In the afternoon, Ms. Rios Fun picked up the older children from school, and

fed and supervised the children.  In the evening, Ms. Rios Fun bathed the younger children;

cooked and fed them dinner; and straightened up the house in preparation for the Defendants'

return home.  Ms. Rios Fun put the younger children to bed, and often was required to lay with

the four-year old until she fell asleep, which could take several hours.  The Defendants usually

returned home around 8 p.m., and Ms. Rios Fun was required to attend to them until around 10

p.m.  Occasionally, the Defendants did not return home until as late as 1 a.m., and Ms. Rios Fun

was required to wait up for them until they arrived home.  Ms. Rios Fun was also required to

regularly water the garden, and did so by carrying heavy buckets of water.

27.     Ms. Rios Fun performed the duties described above at the insistence of both

Defendant Pulgar and Defendant Albegrin.

28.     Ms. Rios Fun struggled to complete all of her housekeeping tasks while

supervising the children.  On several occasions, she informed Defendant Pulgar that she would

not be able to complete all of her tasks because she had to watch the children, including the baby.

Defendant Pulgar dismissed Ms. Rios Fun's concerns, and told Ms. Rios Fun that she had to do

her work.

29.     The Defendants frequently had guests stay for several days or weeks at a time.

The Defendants required that Ms. Rios Fun attend to all visitors in addition to her regular

responsibilities.

30.     Ms. Rios Fun worked the same hours on Saturdays and Sundays and performed basically the same tasks as she did on weekdays, although she did not have to drive the children to and from school.

31.     The Defendants' home in Wayne, New Jersey, comprised two floors with a basement, with four bedrooms, three bathrooms, two living rooms, one television room, and a kitchen.

32.     In violation of the terms of the Contract, Ms. Rios Fun was not given a private room, but was required to sleep in the basement that was also used for laundry, storage, and included a space that the children frequently used to watch movies.  If the children wanted to watch movies at night, Ms. Rios Fun could not go to bed.  Further in violation of the terms of the Contract, the bathroom Ms. Rios Fun used was not for her exclusive use.  The children frequently used it when they were in the basement.  Because she had no privacy, she was required to change her clothes in the bathroom.

33.     In or around November 2012, the Defendants and their two older children travelled to Italy for one week.  Ms. Rios Fun was required to care for the two younger children, and to attend to Defendant Pulgar's mother, who was visiting, twenty-four hours per day during this period.  Ms. Rios Fun was ordered to sleep on a mattress on the floor of the Defendants' bedroom, next to the youngest child's crib, so that she could take care of the baby throughout the night.

**D.     The Defendants' Failure to Pay Plaintiff Her Promised Wages**

34.     The Defendants did not pay Ms. Rios Fun the hourly rate promised to her in the Contract.

35.     At the end of the first month, Defendants told Ms. Rios Fun that instead of earning her hourly rate for all of the hours she worked as provided in the third paragraph of the

first page of the Contract and the second and third paragraphs of the second page of the Contract, the Defendants told Ms. Rios Fun she would only be paid a flat fee of $900 per month.

36.     Despite the express contractual provision that her wages be paid without any deduction, the Defendants deducted from the flat amount of $900 per month the purported cost of items they bought for Ms. Rios Fun without her consent, including the cost of clothes and toiletries.  For example, upon Ms. Rios Fun's arrival to the United States, Defendant Pulgar rejected her wardrobe as inadequate and forced Ms. Rios Fun to go shopping with her for cold weather gear including coats and boots.  Defendant Pulgar purchased those items for Ms. Rios Fun.  Defendants later deducted the purported cost of those items from Ms. Rios Fun's flat amount of $900 per month.  Defendant Pulgar also provided toiletries for Ms. Rios Fun that Ms. Rios Fun did not request.  The Defendants later deducted the purported cost of the toiletries from Ms. Rios Fun's pay.

37.     Ms. Rios Fun was paid approximately $200 in cash for her first month of work. The Defendants deducted approximately $500 from her pay for the purported cost of items they purchased for Ms. Rios Fun without her permission.  The Defendants also wired approximately $500 to Ms. Rios Fun's family at her request as an advance payment for the following month.

38.     The Defendants never explained the deductions, but each month they would make calculations on a notepad and tell Ms. Rios Fun the amount they owed her for her work after subtracting the deductions.

39.     Ms. Rios Fun did not receive any money for her second month of work other than the approximately $500 that was wired to Ms. Rios Fun's family the previous month.

40.     In or around December 2012, Ms. Rios Fun asked Defendant Pulgar why she was not paying her more money for all the hours she worked.  Defendant Pulgar refused to answer

and simply said they would talk about it later, but Defendant Pulgar never did.

41. Over the next several months, the Defendants sent Ms. Rios Fun's family in Peru approximately $300 to $400 each month. Ms. Rios Fun received approximately $100 to $180 per month in cash.

42. In March 2013, Ms. Rios Fun asked the Defendants to help her open a bank account. The Defendants opened the bank account for her and put $300 in the new bank account, her purported earnings after deductions for the month of March, and sent $100 to her family in Peru.

43. The Defendants did not pay Ms. Rios Fun anything for the month of April.

**E.     The Defendants' Isolation, Confinement, and Coercion of Ms. Rios Fun**

44. The Defendants actively took steps to ensure that Ms. Rios Fun remained isolated and completely dependent on them.

45. Ms. Rios Fun was not to leave the house on her own. She was only permitted to leave the house to drive the children to and from school. The Defendants showed her how to get to and from the children's schools and the children's friends' houses, but did not show her how to get anywhere else.

46. Ms. Rios Fun does not speak or understand English and did not feel comfortable driving.

47. Ms. Rios Fun was not given any opportunity to interact with anyone other than the family. The Defendants knew that Ms. Rios Fun could not speak English and would not be able to communicate with anyone else.

48. The Defendants told Ms. Rios Fun that she could not have a cell phone and did not permit her to make calls from their home, except on Sundays after 9 p.m. Eventually Ms. Rios Fun purchased a cell phone that she was only permitted to use in the evenings after the

9

children had gone to sleep.

49.     The Defendants opened Ms. Rios Fun's mail without her knowledge or permission and sometimes did not even give her mail addressed to her.  For example, the Defendants never gave Ms. Rios Fun a letter addressed to her from the United Nations.  Ms. Rios Fun found the letter in Defendant Pulgar's desk when she was cleaning and copied it by hand.

50.     The Defendants frequently reminded Ms. Rios Fun of all of the things they had done for her, and that she should be grateful.  They told her that she was lucky to be in the United States, and that they had spent money to bring her to the United States, to help her obtain a driver's license, and that they were helping to support her family in Peru through the wages they paid her.  These comments made Ms. Rios Fun feel indebted to them.

51.     By their conduct and demeanor, Defendants made clear to Ms. Rios Fun that they were aristocratic, powerful and professional people and that she was a lower class servant girl. This conduct caused Ms. Rios Fun to fear that they would send her home in disgrace if she complained about the hours she was forced to work or the reduction in pay that had been promised in the Contract or the lack of privacy in the basement or the inadequate food she was given.  The Defendants knew that Ms. Rios Fun's family, and in particular, her ill mother, was relying on Ms. Rios Fun's meager earnings and took advantage of Ms. Rios Fun's need to support her family.

52.     Defendant Pulgar frequently raised her voice and yelled at Ms. Rios Fun for very minor mistakes.  For example, Ms. Rios Fun regularly prepared lunch for Defendant Pulgar to take with her to work.  If Ms. Rios Fun prepared lunch for her on a day she did not need to take lunch with her, she would get angry and scream at Ms. Rios Fun.

53.     The Defendants did not permit Ms. Rios Fun to eat the family's food.  The

Defendants bought food specifically for Ms. Rios Fun and monitored the food portions to ensure she was not eating more than what they permitted.  The Defendants only provided Ms. Rios Fun with very basic food, like bread and coffee, and Ms. Rios Fun frequently was hungry.  Ms. Rios Fun would occasionally beg for permission to have some of the family's food, which Ms. Rios Fun found degrading.  Ms. Rios Fun was only occasionally permitted to eat the family's leftovers.

54.     Ms. Rios Fun was not provided with two days off per week as set forth her in Contract.

55.     Ms. Rios Fun regularly asked for the days off she was promised, but the Defendants did not respond to these many requests except sarcastically, suggesting that Ms. Rios Fun's requests for a regular day off were outlandish.

56.     Ms. Rios Fun was not permitted to take a day off until on or around December 30, 2012, over two months after she started working for the Defendants.  Ms. Rios Fun did not know how to get to New York City.  Defendant Albegrin drove Ms. Rios Fun to a mall in New Jersey and Ms. Rios Fun took a bus from the mall to 42nd Street in New York City.  Defendant Pulgar told Ms. Rios Fun before she left that if "[she] gets lost, it is [her] problem."

57.     When Ms. Rios Fun returned from her first day off, Defendant Pulgar punished her for taking the day off.  Defendant Pulgar had prepared a meal for her children, and made a point of counting the portions for each child.  She told the children in Ms. Rios Fun's presence that they must all finish their food so that there would be no leftovers available for Ms. Rios Fun.  Because Ms. Rios Fun relied on leftovers for her food, she went without dinner.

58.     Despite express contractual provisions to the contrary, Ms. Rios Fun was permitted to take only a total of four days off over the six-month period that she worked for the

Defendants.

59.     Despite express contractual provisions otherwise, Ms. Rios Fun was not permitted to take her passport with her on the four days off that Defendants permitted her to take during her entire six months of employment.

60.     In or around January 2013, Ms. Rios Fun developed a severe toothache and inflammation which became very painful.  She asked the Defendants if she could see a dentist but they refused to help her.  Defendant Albegrin told Ms. Rios Fun "this is not my problem."  After several weeks of asking for permission to see a dentist, Defendant Albegrin said "I'm tired of you complaining," and allowed Ms. Rios Fun to see a dentist.  Defendant Albegrin told Ms. Rios Fun that she must return home immediately after the appointment.  The dentist had to perform minor oral surgery, which required that Ms. Rios Fun stay longer than she had anticipated.  The Defendants called the dentist's office, asking where she was and demanding that she return home immediately.  The dentist insisted that Ms. Rios Fun could not return to their home right away.  Ms. Rios Fun returned to the Defendants' home the same day and resumed working immediately, despite being in a lot of pain.

61.     Despite an express contractual provision that Defendants would not retain her passport or visa, Ms. Rios Fun did not have control over her passport or visa and was not permitted to take it with her when she left on one of her very few days off.

**F.     Ms. Rios Fun's Escape from the Defendants**

62.     On or about April 26, 2013, Defendant Pulgar required that Ms. Rios Fun clean the four-year old child's school, which is set up as a cooperative in which each child's family must clean the school once per month.  In addition to her regular duties at home, Ms. Rios Fun was required to clean the school's bathrooms, do the school's laundry, and clean the classrooms.

63.     On or about April 27, 2013, Ms. Rios Fun was permitted to take a day off.

During that day off, Ms. Rios Fun called the National Human Trafficking Resource Center hotline.  Ms. Rios Fun learned of the hotline number from materials she received at the U.S. Embassy in Lima, Peru and from the materials sent to her by the United Nations that she found in Defendant Pulgar's desk.  She was afraid of not returning to the Defendants but she could not bear to continue working sixteen hours a day, every day, with less than one day off per month. She learned of her options by speaking with a person from the hotline and decided she would not return to the Defendants' home.

64.     For the next several days, the Defendants called Ms. Rios Fun nonstop demanding her return.

65.     A few days later, the Defendants' family in Lima, Peru approached Ms. Rios Fun's family in Lima demanding to know where Ms. Rios Fun was hiding.  The Defendants' family harassed Ms. Rios Fun's mother by telling her that the Defendants will report Ms. Rios Fun to the police in the United States.  At that point, Ms. Rios Fun's family did not even know she had escaped.

66.     On or around May 2013, Ms. Rios Fun, accompanied by local police, returned to the Defendants' home to request the return of her property, including her passport and personal items such as clothes, toiletries, and items for her children.  The Defendants refused to turn over Ms. Rios Fun's property, told her they had thrown away her things, including the items that they bought for her and for which they deducted the cost from her wages, and claimed that they had already sent Ms. Rios Fun's passport to Peru to cancel her visa.

**FIRST CLAIM FOR RELIEF**
Trafficking with Respect to Peonage, Slavery, Involuntary Servitude or Forced Labor in
Violation of the Trafficking Victims Protection Act of 2000
(18 U.S.C. §§ 1590, 1595)

67.     Plaintiff realleges and incorporates by reference each and every allegation

contained in the preceding paragraphs as if fully set forth herein.

68.     The Defendants knowingly recruited, transported, and obtained Plaintiff's forced labor and involuntary service in violation of 18 U.S.C. § 1590.

69.     Plaintiff brings this civil cause of action under 18 U.S.C. § 1595.

70.     By inducing Ms. Rios Fun to accept employment with them in the United States through fraud and deception for purposes of subjecting her to a condition of involuntary servitude and forced labor, the Defendants intentionally and outrageously engaged in trafficking of Ms. Rios Fun in violation of 18 U.S.C. § 1590.

71.     The Defendants subsequently paid for her tickets and procured a visa on her behalf to allow her to travel and to enter the United States.

72.     The Defendants transported her to the United States and, upon her arrival, harbored her in their home for the purpose of obtaining and exploiting her labor for little to no pay and maintaining her involuntary servitude.

73.     Plaintiff suffered damages, including emotional distress, humiliation, embarrassment, and lost wages, as a result of the Defendants' conduct.  Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover actual damages, reasonable attorneys' fees, and punitive and exemplary damages in amounts to be proven at trial, and such further relief as the court deems proper.

## SECOND CLAIM FOR RELIEF
Forced Labor Violation of the Trafficking Victims Protection Act of 2000
(18 U.S.C. §§ 1589, 1595)

74.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

75.     Defendants knowingly maintained and benefited Ms. Rios Fun's labor and

services through a pattern of abusive and coercive behavior designed to make Plaintiff believe that she had no choice but to keep working for them, in violation of the forced labor provisions of 18 U.S.C. § 1589.

76.     Plaintiff brings a civil cause of action under 18 U.S.C. § 1595.

77.     The Defendants committed Plaintiff to a position of forced labor by promising her, but in fact failing to pay, adequate wages for work performed from October 26, 2012 until April 27, 2013.

78.     Ms. Rios Fun's forced labor was procured by the Defendants' false promise of decent wages and good working conditions, as articulated by the terms of an employment contract.

79.     Throughout this time, the Defendants made Ms. Rios Fun completely dependent on Ms. Rios Fun by isolating her, engaging in verbal abuse and psychological coercion, and maintaining control over her passport and visa.

80.     As a result of Defendants' intentional and outrageous actions, Plaintiff was forced to continue laboring for them and suffered damages, including emotional distress and lost wages. Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover actual damages, reasonable attorneys' fees, and punitive and exemplary damages in amounts to be proven at trial, and such further relief as the court deems proper.

### THIRD CLAIM FOR RELIEF
Minimum Wage; Fair Labor Standards Act ("FLSA")
(29 U.S.C. §§ 201 *et seq.*)

81.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

82.     Defendants violated the provisions of the FLSA, 29 U.S.C, §§ 201 *et seq.*, by failing to pay Ms. Rios Fun, a live-in domestic worker, the greater of the federal or state

minimum wage.  29 U.S.C. § 206(f); 29 C.F.R. § 552.102; 29 U.S.C. § 218(a).

83.    The federal minimum wage, during all times relevant, was $7.25 per hour. 29 U.S.C. § 206(a)(1).

84.    The Defendants were Plaintiff's employers within the meaning of the FLSA, 29 U.S.C. § 203(d).

85.    Defendants were aware or should have been aware of the requirement to pay Plaintiff the statutorily defined minimum wage for her labor.

86.    Defendants consistently failed to pay Plaintiff the minimum wage for hours worked as required under federal law for her work in New Jersey.

87.    Defendants' failure to pay the minimum wage was willful.

88.    As a result of Defendants' willful violations of the FLSA, under 29 U.S.C. § 216(b), Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid wages, an additional equal amount in liquidated damages, and costs and reasonable attorneys' fees in amounts to be proven at trial, and such further relief as the court deems proper.

### FOURTH CLAIM FOR RELIEF
Minimum Wage and Overtime; New Jersey State Labor Law ("N.J. Lab. Law")
(N.J. Stat. Ann. §§ 34:11-56a4, 34:11-56a25)

89.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

90.    Under New Jersey Labor Law, Plaintiff was entitled to be paid a lawful minimum wage for all hours worked in Defendants' employment.

91.    At all relevant times, Defendants were employers within the meaning of New Jersey Statutes Annotated § 34:11-56a1(g).

92.    At all relevant times, Plaintiff was an employee of Defendants within the meaning of New Jersey Statutes Annotated § 34:11-56a1(h).

93.     During the period of Plaintiff's employment with Defendants, the minimum wage in New Jersey was $7.25 per hour for 40 hours of working time in any week and 1 ½ times Plaintiff's regular hourly wage for each hour of working time in excess of 40 hours in any week. N.J. Stat. Ann. § 34:11-56a4.

94.     During the period of Plaintiff's employment with Defendants, Defendants required Plaintiff to work approximately 16 hours per day, seven days a week, but failed to pay Ms. Rios Fun the statutorily mandated minimum and overtime wage.

95.     Defendants were aware of or should have been aware of the requirement to pay Plaintiff the statutorily defined minimum wage and overtime compensation for her labor.

96.     Defendants' failure to pay Plaintiff the minimum wage and overtime compensation was willful.

97.     As a result of Defendants' willful violations of the New Jersey Labor Law, Plaintiff is entitled to recover the difference between wages due pursuant to the statute and the wages actually paid to her together with costs and reasonable attorneys' fees in amounts to be proven at trial, and such further relief as the court deems proper.

## FIFTH CLAIM FOR RELIEF
Frequency of Payments; N.J. Lab. Law
N.J. Stat. Ann. § 34:11-4.2

98.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

99.     Under New Jersey Statute Annotated § 34.11-4.2, Plaintiff was entitled to payment of full amount of wages due to Plaintiff at least twice during each calendar month.

100.    At all relevant times, Defendants were employers within the meaning of New Jersey Statute Annotated § 34.11-4.1(a).

101.    At all relevant times, Plaintiff was an employee of Defendants within the meaning

of New Jersey Annotated § 34.11-4.1(b).

102.    At all relevant times, Defendants failed to pay Ms. Rios Fun the full amount of wages due to Plaintiff at least two times per calendar month in violation of New Jersey Statute Annotated § 34:11-4.2.

103.    Defendants' failure to timely pay Plaintiff was willful.

104.    As a result of Defendants' willful violations of New Jersey Labor Law, Plaintiff is entitled to recover the full amount of unpaid wages due to Plaintiff and reasonable costs and attorneys' fees in amounts to be proven at trial, and such further relief as the court deems proper.

## SIXTH CLAIM FOR RELIEF
### Breach of Contract

105.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

106.    Plaintiff and Defendant Pulgar entered into a written contract, whereby Plaintiff agreed to work for Defendants, and the Defendants agreed to pay Plaintiff $9.82 per hour for a thirty-five hour work week and overtime pay if work was performed beyond forty hours per week, with no deductions, and provide a room and bathroom for her, among other promises.

107.    Plaintiff and Defendant Pulgar signed the Contract.

108.    Plaintiff has duly performed all conditions and covenants set forth under the employment contract.

109.    Defendant Pulgar willfully and intentionally violated the terms of the employment contract.

110.    Defendant Pulgar breached the terms of the parties' written contract by, among other things:  failing to adequately compensate Plaintiff for the hours she worked; failing to provide a bedroom and bathroom for her exclusive use and adequate meals; prohibiting Plaintiff

18

from taking days off, paid holidays, sick days, and paid vacation in accordance with the terms of the Contract; and retaining Plaintiff's passport, visa, and other personal property.

111.    As a result of Defendant Pulgar's breach of the employment contract, Plaintiff has suffered substantial injury, including unpaid wages, emotional distress, humiliation, and embarrassment.

112.    Plaintiff is entitled to recover any and all damages available to her, including compensatory and consequential damages in amounts to be proven at trial, including costs, attorneys' fees, and such further relief as the court deems proper.

## SEVENTH CLAIM FOR RELIEF
### Conversion

113.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

114.    Defendants wrongfully took and maintained control and custody of Plaintiff's passport, visa, and other personal property without Plaintiff's consent and in direct contravention to the terms of the employment contract between Plaintiff and Defendant Pulgar.

115.    Despite Plaintiff's demands upon the Defendants to return her property, Defendants remain in possession of Plaintiff's passport, visa, and other personal property.

116.    Defendants have willfully and recklessly disregarded Plaintiff's property rights.

117.    As a direct and proximate result of Defendants' wrongful exercise and dominion and control over Plaintiff's personal property, Plaintiff has suffered substantial harm and injury.

118.    Ms. Rios Fun is entitled to the immediate return of her property, including her passport and personal items such as items for her children, compensatory damages, special damages from the deprivation of use of the property, pre-judgment interest, costs, reasonable attorneys' fees, and punitive damages in amounts to be proven at trial, and such further relief as

the court deems proper.

### EIGHTH CLAIM FOR RELIEF
Common Law Fraud

119.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

120.    Defendants materially misrepresented the terms and conditions of her employment, including her wages, living arrangements, paid time off, and benefits, among other terms and conditions.

121.    Defendants made these statements with knowledge that these representations were false, or with reckless disregard as to whether they would be able to provide such compensation or conditions of employment.

122.    Defendants made these statements with the intention that Plaintiff rely on them to her detriment.

123.    In justifiable reliance on Defendants' statements, Plaintiff followed the Defendants to the United States.  She made the journey in the hopes of achieving financial security for herself and her family through the Defendants' promised wage, living arrangements, and other conditions of employment.

124.    The Defendants failed to pay Ms. Rios Fun the promised wages and failed to provide Ms. Rios Fun with the terms and conditions of the employment they promised her.

125.    As a direct and proximate result of Defendants' misrepresentations, Plaintiff suffered substantial injury.

126.    Plaintiff is entitled to recover the compensatory and consequential damages she suffered as a result of the Defendants' fraudulent misrepresentations and punitive damages in amounts to be proven at trial, and such further relief as the court deems proper.

## NINTH CLAIM FOR RELIEF
Unjust Enrichment/*Quantum Meruit*

127.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

128.     Plaintiff worked in good faith as a live-in domestic worker for the Defendants in the United States for approximately six months.  During that time, she worked approximately 16 hours per day, seven days a week, with only four days off.

129.     Plaintiff performed the services as a live-in domestic worker with the reasonable expectation that she would be compensated for her services at the time she performed.

130.     Defendants instructed, supervised, and accepted Plaintiff's services.

131.     Defendants failed to adequately compensate Plaintiff for her work, and only compensated her with paltry sums at irregular intervals.

132.     The Defendants have been unjustly enriched by obtaining substantial benefits at Plaintiff's expense in the form of inexpensive household labor and other domestic services.

133.     The benefits that Defendants derived from Ms. Rios Fun's labor came at enormous expense to her.

134.     Defendants created a severe power imbalance through isolation, manipulation, exploitation, and other means described herein, in order to prevent Ms. Rios Fun from either learning that she was entitled to a fair wage or challenging the circumstances of her employment.

135.     Fairness and good conscience mandate that Ms. Rios Fun receive fair compensation for the benefits she conferred upon Defendants at her expense.

136.     Plaintiff is entitled to recover additional damages in an amount to be proven at trial, and such further relief as the court may deem proper.

## TENTH CLAIM FOR RELIEF
Restraining Order on the Basis of Harassment
N.J. Stat. §§ 2C:33-4, 2C:25-28

137.   Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

138.   Under the New Jersey Prevention of Domestic Violence Act, Plaintiff is entitled to be free from harassment by the Defendants. N.J. Stat. Ann. § 2C: 25-18.

139.   Plaintiff is protected by New Jersey domestic violence law as a "present or former household member." N.J. Stat. Ann. § 2C: 25-19(d).

140.   Domestic violence includes harassment as defined by N.J. Stat. Ann § 2C: 33-4.

141.   Defendants committed harassment when they engaged in alarming and repetitive communications to the Plaintiff with the purpose to alarm or seriously annoy Plaintiff by repeatedly demanding she return to their home, threatening to call the police on her, and contacting her family without her knowledge.

142.   Defendants' actions were committed with the purpose to harass Ms. Rios Fun.

143.   To prevent further harassment, Ms. Rios Fun is entitled to a restraining order enjoining Defendants from having any further contact with her or her family.

## V.    JURY DEMAND

144.   Plaintiff requests a trial by jury.

## VI.    PRAYER

WHEREFORE, Plaintiff prays that this Court:

1.    Enter judgment in favor of Plaintiff in each and every cause of action asserted in the Complaint;

2.    Award such damages as may be appropriate, including compensatory, punitive

and liquidated damages;

3.       Order the immediate return of Plaintiff's personal property, including her passport and personal items such as clothes, toiletries, and items for her children;

4.       Award Plaintiff her attorneys' fees and costs;

5.       Award Plaintiff pre- and post-judgment interest;

6.       Grant Plaintiff a restraining order enjoining Defendants from harassing her; and

7.       Award any such other and further relief as the Court deems just and proper.

DATED this 13th day of June, 2013.

Respectfully submitted,

/s/  Michael B. DeSanctis
Michael B. DeSanctis (MD5737)
Richard F. Levy (motion for *pro hac vice* forthcoming)
Christine I. Lee (motion for *pro hac vice* forthcoming)
JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022-3908
212-891-1600 (phone)
212-909-0843 (fax)

Dana Sussman (motion for *pro hac vice* forthcoming)
SAFE HORIZON ANTI-TRAFFICKING PROGRAM
50 Court Street, 8th Floor
Brooklyn, NY 11201
718-943-8641 (phone)
718-943-8653 (fax)

*Attorneys for Plaintiff*